Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 04-30417 (LMW) |
| | ) | | |
| THE HOMESTEADS COMMUNITY AT NEWTOWN, LLC, | ) | CHAPTER | 7 |
| | ) | | |
| DEBTOR. | ) | ECF NO. | 448, 460, 464, 519, 528, 530, 560 |

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 04-32365 (ASD) |
| | ) | | |
| NUEVO PUEBLO, LLC, | ) | CHAPTER | 7 |
| | ) | | |
| DEBTOR. | ) | ECF NO. | 395, 398, 442, 454, 456, 473 |

**APPEARANCES**

Ronald I. Chorches, Esq.
Law Offices of Ronald I. Chorches, LLC
449 Silas Deane Highway, 2nd Floor
Wethersfield, CT 06109

Chapter 7 Trustee for Debtor Homesteads Community at Newtown, LLC

William S. Fish, Jr., Esq.
Amy E. Markim, Esq.
Hinckley, Allen & Snyder, LLP
20 Church Street, 18th Floor
Hartford, CT 06103

Attorney for Trustee Ronald I. Chorches

Roberta Napolitano, Esq.
P.O. Box 9177
Bridgeport, CT 06601

Chapter 7 Trustee for Debtor Nuevo Pueblo, LLC

Dean W. Baker, Esq.
Law Office of Dean W. Baker
195 Church Street, 8th Floor
New Haven, CT 06510

Attorney for Trustee Roberta Napolitano

| | |
|---|---|
| Patrick W. Boatman, Esq.<br>Law Offices of Patrick W. Boatman, LLC<br>111 Founders Plaza, Suite 1000<br>East Hartford, CT 06108 | Attorney for Debtors Homestead Community<br>Community at Newtown, LLC and<br>Nuevo Pueblo, LLC |
| Gary F. Sheldon, Esq.<br>McElroy, Deutsch, Mulvaney &<br>Carpenter/PH, LLP<br>One State Street<br>Hartford, CT 06103 | Attorney for KBE Building Corporation<br>(f/k/a Konover Construction Company, Inc.) |
| Douglas S. Skalka, Esq.<br>Nancy B. Kinsella, Esq.<br>Jane E. Ballerini, Esq.<br>Neubert, Pepe & Monteith, P.C.<br>195 Church Street, 13th Floor<br>New Haven, CT 06510 | Attorney for Franklin Construction, LLC;<br>Mix Avenue, LLC; Eli Whitney, LLC; and<br>New Haven Mortgage Refinance, LLC |
| Nicole Liguori Micklich, Esq.<br>Garcia & Milas, P.C.<br>44 Trumbull Street<br>New Haven, CT 06510 | Attorney for Andrews Construction Co., LLC |
| Vincent M. Marino, Esq.<br>Cohen and Wolf, P.C.<br>1115 Broad Street<br>Bridgeport, CT 06604 | Attorney for the Town of Newtown |
| Thomas J. O'Neill, Esq.<br>Day Pitney, LLP<br>One Canterbury Green<br>Stamford, CT 06901-2047 | Attorney for Paragon Realty Group, LLC |

## MEMORANDUM AND ORDER RE: TRUSTEES' JOINT MOTIONS FOR APPROVAL OF REVISED COMPROMISE AND DEBTORS' MOTIONS TO RECONSIDER PRIOR DECISION

Lorraine Murphy Weil, Chief United States Bankruptcy Judge

## I. INTRODUCTION

On August 21, 2012, the court issued that certain Partial Memorandum of Decision and Order Re: Trustees' Joint Motion for Approval of Global Compromise (*see* HCN ECF No. 514 and NP ECF No. 439, collectively, the "Prior Decision")[1] in each of the above-referenced chapter 7 cases. The Prior Decision is deemed incorporated herein by reference as if fully set forth. All capitalized terms used but not otherwise defined herein have the meanings ascribed to the same in the Prior Decision.

The Prior Decision was in respect of a certain "Global Compromise" proposed jointly by the Trustees. The Prior Decision did not approve the Global Compromise *in toto.* The Prior Decision divided the Global Compromise into two segments: a settlement (the "HCN Settlement") among the HCN Trustee and various relevant creditors in the HCN Case; and a settlement between the Trustees (the "Trustees Settlement"). One element of the HCN Settlement was the full and final settlement of the Konover Adversary Proceeding by the payment from the HCN estate of $450,000 to Konover. The Prior Decision approved that settlement (the "Konover Settlement") on an interlocutory basis (*see* HCN ECF No. 514 at 62 ("[T]he court finds the proposed settlement of the Konover Mechanic's Lien to be reasonable (although possibly on the "high end" of reasonable) and a sound exercise of the HCN Trustee's business judgment.")), without applying the *Iridium* Factors (*see id.* at 67 n.47).[2] However, the Prior Decision expressed certain concerns about the Trustees

---

[1] References herein to the docket of Case No. 04-30417 appear in the following form: "HCN ECF No. __." References herein to the docket of Case No. 04-32365 appear in the following form: "NP ECF No. __."

[2] In the Motion To Reconsider (defined below), the Debtors ask the court to reconsider its interlocutory decision.

Settlement and reopened the subject proceedings to "afford the Trustees one last opportunity to persuade the court [on that point at a reopened evidentiary hearing]," (Prior Decision at 67). In response to the Prior Decision, (a) the Debtors filed motions to reconsider (described more fully below) and (b) the Trustees put forward a revised compromise (described more fully below, the "Revised Compromise") which substantially limits the scope of the Global Compromise.

The matters before the court with respect to the HCN Case are: (a) the Trustees' motion to approve the Global Compromise (HCN ECF No. 448, the "HCN Compromise Motion") as modified by (i) the Trustees' proposed revision to the Global Compromise (HCN ECF No. 528) and (ii) post trial clarification filed by the Trustees with respect to the Revised Compromise (HCN ECF No. 560); (b) Paragon's objection to the Global Compromise (HCN ECF No. 460);[3] (c) Debtors' objection to the Global Compromise (HCN ECF No. 464); (d) Debtors' motion to reconsider the Prior Decision (HCN ECF No. 519, the "HCN Motion To Reconsider"); and (e) Konover's objection to the HCN Motion to Reconsider (HCN ECF No. 530, the "HCN Reconsideration Objection").

The matters before the court with respect to the NP Case are: (a) the Trustees' motion to approve the Global Compromise (NP ECF No. 395, the "NP Compromise Motion") as modified by (i) the Trustees' proposed revision to the Global Compromise (NP ECF No. 454) and (ii) post trial clarification filed by the Trustees with respect to the Revised Compromise (NP ECF No. 473); (b) Debtors' objection to the Global Compromise (NP ECF No. 398); (c) Debtors' motion to reconsider with respect to the Prior Decision (NP ECF No. 442, the "NP Motion To Reconsider,"

---

[3] In the Prior Decision, the court overruled the Paragon Objection for failure to prosecute. (*See* HCN ECF No. 515.) Further, Paragon has not filed an objection to the Revised Compromise. (*Cf.* HCN ECF No. 539.) Accordingly, the Paragon Objection hereby is finally overruled.

collectively with the HCN Motion To Reconsider, the "Motion To Reconsider"); and (d) Konover's objection to the NP Motion To Reconsider (NP ECF No. 456, the "NP Reconsideration Objection," collectively with the HCN Reconsideration Objection, the "Reconsideration Objection").

The court has jurisdiction over the foregoing matters (and the authority to enter a final order with respect thereto) for the reasons stated in the Prior Decision. This memorandum constitutes the findings of fact and conclusions of law mandated by Rule 52 of the Federal Rules of Civil Procedure (made applicable here by Rule 7052 and 9014 of the Federal Rules of Bankruptcy Procedure).

## II. FURTHER BACKGROUND

The Debtors filed the Motion To Reconsider (and supporting brief) on August 31, 2012. (*See, e.g.,* HCN ECF Nos. 519, 520.)[4] On October 10, 2012, the Trustees caused to be filed a certain Memorandum Regarding Partial Memorandum of Decision and Order Re: Trustees' Joint Motion for Approval of Global Compromise. (*See* HCN ECF No. 528, the "Trustees Response"). As explained more fully below, the Trustees Response substantially revised the Global Compromise, restructuring the settlement primarily as a settlement of four adversary proceedings in the HCN Case. (*See id.*) On October 10, 2012, Konover filed the Reconsideration Objection. (*See* HCN ECF No. 530.)[5]

The reopened proceedings contemplated by the Prior Decision were convened on October 11, 2012 (the "Second Hearing").[6] The Debtor introduced two additional exhibits into the record

---

[4] Hereafter, citations to the docket of the HCN Case are also deemed to be citations to the corresponding docket item on the NP Case docket.

[5] The Debtors and Konover (only Konover objected to the Motion To Reconsider) each filed multiple briefs in respect of the Motion To Reconsider.

[6] The June 28, 2011 trial is hereafter referred to as the "Trial."

at the Second Hearing: Debtor Exh. 1 (copy of Konover Summons and Complaint against Greenwich Insurance Company); and Debtor Exh. 2 (copy of check no. 11440 from Avalon Risk Associates, Inc., Claims Settlement Account with respect to Debtor Exh. 1, made payable to Konover in the amount of $102,500 and dated April 25, 2005).[7] The Motion To Reconsider was heard at the same time. At the Second Hearing, the settlement proponents articulated the substance of the Trustees Response to the court. At the conclusion of the Second Hearing, the court took the HCN Compromise Motion and the NP Compromise Motion (both as modified by the Trustees Response) and the Motion To Reconsider under advisement "subject to further notification to creditors." (*See, e.g.,* HCN Case Docket Entry for October 11, 2012.) The Debtors complied with the later directive on October 15, 2012. (*See, e.g.,* HCN ECF No. 537.) The Trustees complied with such directive on October 15, 2012. (*See, e.g.,* HCN ECF No. 539.) By order dated October 15, 2012, the court directed the Debtors to file a written reply to the Trustees Response. (*See, e.g.,* HCN ECF No. 538.) The Debtors complied with that order on October 29, 2012. (*See, e.g.,* HCN ECF No. 546.) On December 5, 2012, the court issued a certain Order for Clarification directing that the Trustees clarify certain aspects of the Trustees Response. (*See, e.g.,* HCN ECF No. 557, the "Clarification Order.") The Trustees complied with that order on December 13, 2012. (*See, e.g.,* HCN ECF No. 560.)[8]

---

[7] Debtor Exh. 1 and 2 hereafter are referred to as the "New Exhibits." The New Exhibits were admitted as exhibits at the Second Hearing for "what they were worth" and without any determination of relevance. (*See* HCN ECF No. 541 at 48:3-18 (stipulation of counsel).)

[8] HCN ECF Nos. 528 and 560, and NP ECF Nos. 454 and 473, are hereafter referred to collectively as the "Revised Compromise" and are deemed to be the definitive statement thereof.

## III. MOTION TO RECONSIDER

### A. The Motion

The Debtors seek this court's reconsideration of its interlocutory approval of the Konover Settlement on the following grounds:

- The court erred because it failed to require the Trustees to establish that there is probable cause to sustain the validity of Konover's lien in accordance with Section 49-35b(a) of the Connecticut General Statutes.
- The court erred when it concluded that the HCN Trustee would not have prevailed on the S/J Motion but would have been required to proceed to trial. Specifically, the Debtors argue that the court erred when it concluded that it had the discretion to deny the S/J Motion (and require a full development of the record at trial) with respect to the "*Pomarico* issue"[9] and the "consent issue." Specifically, the Debtors argue, *Pomarico* at best is limited to "site work" on one lot which benefits the relevant other lot. Finally, the Debtors argue that the court misapprehended the nature of the "consent issue."
- Recently discovered evidence (*i.e.,* the New Exhibits) allegedly not available at trial demonstrates that Konover's claim against the HCN estate was inflated by failure to acknowledge receipt of a bond payment. (*See* Debtors Exh. 1 and 2.)

### B. Legal Standard

As noted above, the court's approval of the Konover Settlement was interlocutory in nature. The standard for reconsideration of an interlocutory order is as follows:

---

[9] *See Pomarico v. Gary Constr., Inc.,* 5 Conn. App. 106, *cert. denied,* 197 Conn. 816 (1985).

> Although Rule 60(b) (and, for that matter, Fed.R.Civ.P. 59(e)) do not supply the power or the standard for deciding whether to reconsider an interlocutory order, courts have generally applied criteria that respect the need to grant some measure of finality even to interlocutory orders and which discourage the filing of endless motions for reconsideration. Thus, as the court observed in *Rottmund v. Continental Assur. Co.*, 813 F.Supp. 1104, 1107 (E.D.Pa.1992), "[a] federal district court has inherent power over interlocutory orders and may modify, vacate, or set aside these orders 'when it is consonant with justice to do so.' *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir.1973). Because of the interest in finality, however, courts should grant motions for reconsideration sparingly." Courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change in controlling law; (2) newly discovered evidence; or (3) to correct a clear error of law or to prevent a manifest injustice. *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed.Appx. 949, 959 (6th Cir. Feb. 6, 2004) (citing *Reich v. Hall Holding Co.*, 990 F.Supp. 955, 965 (N.D.Ohio 1998)).

*McWhorter v. Elsea, Inc.,* No. 2:00-cv-473, 2006 WL 3483964, at *2 (S.D. Ohio Nov. 30, 2006). *Accord Evergreen Nat'l Indem. Co. v. Capstone Bldg. Corp.,* No. 3-07-cv-01189 (JCH), 2008 WL 926520, at *1 (D. Conn. Mar. 31, 2008). *Cf.* D. Conn. L. Civ. R. 7(c).

**C. Analysis**

**1. Applicability of Conn. Gen. Stat. § 49-35b(a) (Probable Cause Standard)**

As noted above, the Debtors argue that the court erred in the Prior Decision because it approved the Konover Settlement notwithstanding that (arguably) Konover had failed to make out the "probable cause" case required by Section 49-35b(a). The first response to that argument is that Section 49-35b(a) does not govern proceedings for approval of a settlement in bankruptcy. Rather, such proceedings are governed by the federal law discussed in Part V of the Prior Decision. (*See* Prior Decision at 30-32.)

The second response is that the court concluded that it had the discretion to deny the HCN Trustee's S/J Motion in favor of developing a full record at trial even in a situation "in which the moving party seems to have discharged his burden . . . ." (*See* Prior Decision at 61.) Further,

whether or not Konover had satisfied its "probable cause" burden in opposition to the S/J Motion (or whether it could have satisfied its "probable cause" burden at trial) is not the issue. The issue is that (as the record supports) the HCN Trustee could reasonably have concluded that further prosecution of the S/J Motion would be protracted and expensive and would avail him nothing, and that any trial also would be protracted and expensive.

**2. *Pomarico* Issue**

The Debtors argue that the court erred when it concluded that it had the discretion to deny the S/J Motion to permit the parties to develop the record at trial with respect to the *Pomarico* issue. With respect to the *Pomarico* issue, the Debtors attempt to delineate the limits of *Pomarico* (for example, that *Pomarico* is limited to "site development work" on one lot which benefits the relevant lot and that *Pomarico* will not cover the situation where the relevant work is other kinds of work).[10] However, the court's unwillingness to determine the limits of *Pomarico* as applied to a specific situation on less than a full record was one of the reasons that the court concluded that it would have exercised its discretion to deny the S/J Motion and proceed to trial instead. The court believes that its solicitude with respect to determining the limits of *Pomarico* is justified: an overly broad or overly narrow interpretation of *Pomarico* could have adverse effects on Connecticut real estate development and its financing. *Cf. Butch v. Thangamuthu*, 37 Conn. App. 547, 550-51 (1995) (citing *Pomarico*, 5 Conn. App. at 111) ("[T]he filing of a blanket lien against a subdivision is the

[10] The Debtors cite no binding authority on that point. That further supports the court's preference for a fully developed record.

appropriate way for a contractor providing materials and services for a subdivision to proceed, even when some lots in the subdivision have subsequently been transferred to individual owners.").[11]

**3. <u>The "Consent" Issue</u>**

The Debtors argue that the court erred when it concluded that it had the discretion to deny the S/J Motion to permit the parties to develop the "consent" issue at a full trial. First, the Debtors argue that the court has misapprehended the scope of "consent." The Debtors argue that the court proceeded on the mistaken belief that the "consent" required was only a consent to the performance of the work. That is not true. The court was fully aware that the "consent meant by the statute must be a consent that indicates an agreement that the owner of at least the land shall be, or may be, liable for the materials or labor," (Prior Decision at 58 (citing *Waterview Site Servs., Inc. v. Pay Day, Inc.,* 125 Conn. App. 561, 566 (2010), *cert. denied,* 300 Conn. 910 (2011))).[12]

Second, the Debtors argue that the court mistakenly believed that the "consent" required was a consent to "*in rem*" liability. That is not true. The court was clear that the necessary "consent" was consent to *in personam* liability. Whether that *in personam* liability would support a mechanic's lien

---

[11] The Debtors also argue that Homesteads "could only be responsible for payment for work that it consented to *on its own property*," (HCN ECF No. 546 at 7 (emphasis added)). That is a new argument and, in fact, the Debtors previously have argued to the contrary. (*See* HCN ECF No. 520 at 10, 14).) Moreover, *Pomarico* supports the contrary position.

[12] Although *Waterview Site Services* goes on to say that "[w]hether the . . . [owner] consented to the performance of the . . . [contractor's] work is a question of fact," *id.* at 566, it is apparent from the opinion that the court there also considered the factual issue of consent to include consent to be held liable for the work. *See, e.g., id.* at 567 ("The court may have credited . . . [certain] pieces of evidence in finding that the defendant *consented to being held liable for the payments as required under the statute*;" trial court judgment for contractor upheld (emphasis added)).

(*i.e.,* a statutory *in rem* liability) under applicable Connecticut law would depend on fulfillment of other applicable statutory requirements.[13]

**4. "Newly Discovered Evidence" *Vel Non***

The Debtors do not satisfactorily explain why the New Exhibits could not have been introduced at the Trial. (*See* HCN ECF No. 541 at 34:11-20 ("The . . . evidence of the bond payment was available . . . . And, frankly, I did not realize until the last couple of weeks that in [Konover's] calculation of the debt, they had omitted the payment they received from . . . [the bond]." (statement of Attorney Boatman).) The burden is on the Debtors to establish that the New Exhibits were not available for production at the Trial. The court is not persuaded that the Debtors have carried that burden. *Cf. Arms v. Keybank, N.A. (In re Arms),* 238 B.R. 259, 261 (Bankr. D. Vt. 1999) ("While it may be appropriate for a court to reconsider a previous order to correct a manifest error of law or fact or to permit it to consider newly discovered evidence, the purpose of a motion to alter or amend is not to give the moving party a second bite at the apple." (citation and internal quotation marks omitted)).[14]

**D. Conclusion**

Having (for the reasons discussed above) determined that the standard for reconsideration of an interlocutory order has not been satisfied, the court concludes that the Motion To Reconsider should be denied and the Reconsideration Objection should be sustained.

---

[13] The court need not consider the Debtors' argument that such a consent would preclude a statutory mechanic lien.

[14] On this record, the court declines to exercise any residual discretion it may have. *Cf. In re Stanley,* 185 B.R. 417, 421-22 (Bankr. D. Conn. 1985) (Shiff, J.). The court has considered the Debtors' other arguments for reconsideration and finds them to be unpersuasive or otherwise inapposite.

## IV. REVISED COMPROMISE[15]

The Revised Compromise provides as follows:

Specifically, the four adversary proceedings would be resolved as follows:

1. The . . . [Konover Adversary Proceeding] would be settled for a payment of $450,000 to . . . [Konover] from the . . . [HCN] estate and by the withdrawal by . . . [Konover] of its claim against the . . . [NP] estate . . . .

2. The remaining three adversary proceedings [between the HCN Trustee and Franklin] and its affiliates [*i.e.*, the Franklin Adversary Proceeding, the Mix Adversary Proceeding and the Eli Whitney Adversary Proceeding], would be settled by each of those proceedings being withdrawn with prejudice and by Mix and Eli Whitney agreeing that neither has a secured claim against the . . . [HCN] estate. In addition, Mix and . . . [NHMR[16]], another Franklin affiliate, would withdraw their claims against the . . . [NP] estate. Finally, . . . the Trustees would . . . [not oppose allowance of the] Franklin claims in the following pre-petition amounts: HCN - $1,671,015.07 and NP - $1,733,274.50. (The Trustees and Franklin recognize that the Debtors have filed objections to the Franklin claims. Those objections would be resolved separate and apart from the proposed settlement described herein.)

All of the remaining aspects of the global settlement . . . would be withdrawn including the agreement by . . . [NHMR] to limit its secured claim against the . . . [HCN] estate and the proposed payments to professionals.[[17]]

---

15 The Global Compromise is described in the Prior Decision. (*See* Prior Decision at 27-29.)

16 As explained in the Prior Decision, NHMR holds the NHSB mortgage by assignment. (*See* Prior Decision at 22 n.18.)

17 The Trustees Response further states as follows:

It is the expectation of the Trustees that if the above aspects are approved by this Court (consistent with the . . . [Prior Decision]), then the NP Trustee would be in a position to file papers promptly with regard to a final distribution of the . . . [NP] estate since all disputed claims would then be resolved. The HCN Trustee also would file papers promptly seeking to make distributions to the Town of Newtown on its secured claim in the amount of $99,000, a distribution to Andrews Construction Company on its settled secured claim in the amount of $20,000 and a distribution to . . . [NHMR] on its secured claim in the full allowed amount including any allowed

(HCN ECF No. 528 at 2-3 (citations omitted).)

As noted above, pursuant to the Clarification Order the Trustees clarified the Revised Compromise as follows:

- The Revised Compromise treats the Konover claim as an allowed secured claim, senior to the claims of Franklin (and NHMR) and not as a "carve-out"[18] from Franklin's claim, but only to the extent of $450,000. (*See, e.g.,* HCN ECF No. 560 at 2.)
- The settlement with Andrews is not properly characterized as a "carve-out" because Andrews also asserts a senior secured claim with respect to certain fixtures. Rather, the payment to Andrews is properly characterized as payment on a senior secured claim. (*See id.* at 2.)

---

fees and post-petition interest. Thereafter, the HCN Trustee would seek to finally administer the . . . [HCN] estate. In that process, if necessary, Franklin has agreed to cap its secured claim in an amount sufficient to permit allowed Chapter 7 administrative expenses to be paid in at least the following amounts:

| | |
|---|---|
| Hinckley Allen: | $200,000 |
| Reid & Riege: | $ 10,000 |
| Chorches Law Firm: | $ 10,000 |
| Andrew Brand: | $ 60,000 |
| Trustee Fees: | $250,000 |

(*Id.* at 3-4.) The court deems the foregoing to be a representation of intent by the Trustees rather than a term or condition of the Revised Compromise. In any event, except with respect to effectuation of the actual Revised Compromise, the court does not hereby approve (or disapprove) any future acts by the Trustees in these cases.

[18] (*See* Prior Decision at 64-65 (explanation of concept of "carve-out").)

- Franklin's agreement with respect to the administrative expense claims of professionals and the contingency reserve (for future possible administrative expenses) is more appropriately considered a traditional "carve-out." (*See id.*)[19]

## V. APPROVAL OF THE REVISED COMPROMISE *VEL NON*

The Revised Compromise is not a "global settlement," but it is to some degree a "package settlement." The elements of that "package" are set forth below.

As discussed above, the Revised Compromise provides that the Mix Adversary Proceeding and the Eli Whitney Proceeding would be withdrawn with prejudice with both Mix and Eli Whitney agreeing that neither has a secured claim against the HCN estate. In addition, Mix would withdraw its unsecured claim against the NP Case (as would NHMR). The settlement of the Mix Adversary Proceeding and the Eli Whitney Adversary Proceeding has never been the subject of contention in these proceedings. Such settlement is a complete "win" for the Trustees.

Also as discussed above, the Revised Compromise provides that the Franklin Adversary Proceeding would be withdrawn with prejudice provided that the Trustees would not oppose allowance of the Franklin claims in the following prepetition amounts: HCN - $1,671,015.07 and NP - $1,733,274.50. The Debtors have strenuously disputed the amount of those claims. However,

---

[19] The Trustees further state:

> [T]he Court need not decide this question now since the issue is not yet presented to the Court. Moreover, it is unlikely that a carve-out issue for these [sic] administrative expense claims ever will be presented to the Court since Franklin also has agreed to cap its secured claim in the HCN Case in an amount sufficient to allow the agreed claims of professionals to be paid as Chapter 7 administrative expense claims in the ordinary course, which makes a carve-out unnecessary.

(*See id.* at 2-3.)

the agreement of the Trustees is not binding on the Debtors and is without prejudice to prosecution of the Debtors' pending claim objections. (*See* Prior Decision at 11-13 (discussion of Debtors' pending claim objections).)

Also as discussed above, the Konover Adversary Proceeding (including the HCN Trustee's claims for an affirmative monetary recovery against Konover) would be fully and finally settled by the payment from the HCN estate of $450,000 to Konover in full satisfaction of a (stipulated) senior secured claim.[20] The Konover Settlement has been the primary bone of contention in these proceedings.

As noted above, in the Prior Decision the court approved the Konover Settlement on an interlocutory basis as "'reasonable' . . . and a sound exercise of the HCN Trustee's business judgment," (HCN ECF No. 514 at 62). However, the current "package" settlement (including the Konover Settlement) must be subjected to analysis using the *Iridium* Factors. Accordingly, the court does so below.

**A. <u>The *Iridium* Factors</u>**

The *Iridium* Factors are as follows:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay . . . ; (3) the paramount interests of the creditors . . . ; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting . . . the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

[20] As noted above, Konover also will withdraw its unsecured claim against the NP estate.

*Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (citations and internal quotation marks omitted). Each of the *Iridium* Factors is considered in turn below.

**1. Balance between the Litigation's Possibility of Success and the Settlement's Future Benefits**

**a. Possibility of Litigation Success**

The HCN Trustee did not testify as to his opinion with respect to the merits of the Konover Mechanic's Lien claim. Rather, the HCN Trustee focused on the possibility that, even if he prevailed on his attack against the Konover Mechanic's Lien, that victory would yield little or nothing unless he prevailed on his affirmative recovery claim. However, the HCN Trustee believes that there is a small likelihood that he would prevail on his claim for affirmative recovery against Konover. (*See* Prior Decision at 48-49, 57-58.) Consequently, the HCN Trustee attributes no material value to his claims for affirmative recovery against Konover (and the Debtors do not claim otherwise). (*See* Prior Decision at 57-58.) The HCN Trustee testified that if he succeeded in reducing Konover's claim but failed to obtain an affirmative recovery against Konover, the size of that reduction would be insignificant due to the Franklin claim. (*See* HCN ECF No. 501 at 86:19-87:6 (testimony of the HCN Trustee).)[21]

---

[21] For reasons discussed above, consideration of the prospects of success for the Mix Adversary Proceeding and the Eli Whitney Adversary Proceeding do not add materially to this part of the *Iridium* analysis. The NP Trustee did not testify as to her opinion as to the merits of Konover's unsecured claim against the NP estate. She did testify that she had no significant disputes with the Franklin claim in the NP Case. (*See* HCN ECF No. 501 at 118:5-119:13 (testimony of NP Trustee); *see also id.* at 127:8-132:1 (testimony of NP Trustee).)

**b. Settlement's Future Benefits**

These cases have been pending since 2004 with no substantial distributions having been made (except with respect to the partial payment of the secured claim of NHMR in the HCN Case) and with administrative expenses continuing to accrue. Moreover, the HCN estate faces continuing diminution by the continuing accrual of postpetition interest on secured claims. *See* 11 U.S.C. § 506(b). Further, the cash proceeds in both cases effectively are earning "negative interest." (*See* Prior Decision at 23-24 at n. 20.) The Konover Mechanic's Lien (and the related litigation) has prevented the HCN Trustee from taking any substantial steps towards closing the HCN Case and/or making substantial distributions to creditors (*e.g.,* Andrews, Town of Newtown, NHMR, administrative expense claimants). (*See* HCN ECF No. 501 at 102:2-24 (testimony of HCN Trustee).) Konover's unsecured claim in the NP Case has similarly prevented the NP Trustee from making distributions and closing her case. (*See* HCN ECF No. 501 at 125:5-17 (testimony of NP Trustee).) Resolution of the Konover claims in both cases (as well as the elimination of the other referenced claims in accordance with the Revised Compromise) pursuant to the Revised Compromise would permit each of the Trustees promptly to take substantial steps toward getting money into the hands of creditors. (*See* n. 17, *supra.*) The Trustees considered such progress toward case closing to be the primary benefit of settlement. (*See, e.g., id.* at 125:5-14) (testimony of NP Trustee).)

An additional benefit of the Revised Compromise is that it shifts to the Debtors the expense of litigating objections to Franklin's claims against the two estates (a task the Debtors choose to undertake (*see* Prior Decision at 11-13)) when neither of the Trustees thought pursuit of such

litigation to be appropriate. (*See, e.g.,* HCN ECF No. 501 at 117:24-119:13; *see also id.* at 127:8-132:1 (testimony of NP Trustee).)

**2. Likelihood of Complex and Protracted Litigation**

As discussed in the Prior Decision, prosecution of the S/J Motion by the HCN Trustee would be expensive (*see* Prior Decision at 54) and likely would have been unsuccessful (*see* Prior Decision at 61; *see also* Part III, *supra*). Accordingly, a complex and protracted trial would ensue, covering both the affirmative recovery and Konover Mechanic's Lien issues.

The NP Trustee did not testify as to her opinion as to the merits of Konover's unsecured claim against the NP estate. However, it should be noted that, for Konover to prevail on its unsecured claim against the NP estate, Konover would have to prevail on both the "consent to be liable" issue (that would establish HCN's *in personam* liability) and the substantive consolidation issue (that would make the NP estate liable for Konover's claim against the HCN estate). The NP Trustee appears to be content to shift her litigation expense to the HCN Trustee on the "consent" issue (*i.e.,* let the HCN Trustee "carry the ball" on that issue) and thus her timetable is dependent upon his. Litigation of a substantive consolidation claim is complicated when, as here, there is overlapping management (*i.e.,* Linda Silberstein) between two debtor entities (HCN and NP) that were engaged in related businesses.

**3. Paramount Interests of Creditors**

As discussed above, the Trustees' disputes with Konover have hindered distributions to creditors in these cases for more than eight years. The Revised Compromise will get money into their hands. If the Revised Compromise is not approved, distributions will again be deferred (and possibly diminished). The interests of creditors favor approval of the Revised Compromise.

#### 4. Whether Other Parties in Interest Support the Settlement

Only one creditor objected to the Global Compromise (*i.e.,* Paragon) and no creditors have objected to the Revised Compromise.

#### 5. The Competency and Experience of Counsel Supporting the Settlement

Both the Trustees are attorneys and are competent and experienced trustees. (*See* HCN ECF No. 501 at 78:8-79:4 (testimony of HCN Trustee); *id.* at 114:4-19 (testimony of the NP Trustee).)

#### 6. Any Releases To Be Obtained by Officers and Directors

No releases are to be issued to the Debtors' management.

#### 7. The Extent to which the Settlement is the Product of Arm's Length Bargaining

The Revised Compromise is less favorable to Franklin than the Global Compromise. The HCN Trustee, the NP Trustee and counsel for Konover testified at the Trial with respect to the process which produced the Global Compromise (including two mediation sessions). (*See, e.g.,* HCN ECF No. 501 at 79:13-82:15, 93:14-99:17 (testimony of HCN Trustee); *id.* at 122:17-24 (testimony of NP Trustee); *id.* at 12:17-14:25, 43:3-49:7 (testimony of Konover's counsel).) Based upon the record, the court is persuaded that the subject settlement is the result of vigorous, arms length negotiations among the parties.

### B. Conclusion

The court has weighed the *Iridium* Factors with respect to all of the foregoing, and has concluded that the product of such analysis favors approval of the Revised Compromise.

## VI. CONCLUSION

For the reasons discussed above, the court has reached the following conclusions:

- the Motion To Reconsider (HCN ECF No. 519 and NP ECF No. 442) should be denied;
- the Reconsideration Objection (HCN ECF No. 530 and NP ECF No. 456) should be sustained;
- the HCN Compromise Motion (HCN ECF No. 448 as modified by HCN ECF Nos. 528 and 560) should be granted;
- Paragon's objection to the Global Compromise (now the Revised Compromise) in the HCN Case (HCN ECF No. 460) should be overruled;
- the Debtors' objection to the Global Compromise (now the Revised Compromise) in the HCN Case (HCN ECF No. 464) should be overruled;
- the NP Compromise Motion (NP ECF No. 395 as modified by NP ECF Nos. 454 and 473) should be granted;
- the Debtors' objection to the Global Compromise (now the Revised Compromise) in the NP Case (NP ECF No. 398) should be overruled.

It is **SO ORDERED.**

Dated: March 11, 2013 BY THE COURT

Lorraine Murphy Weil
Chief United States Bankruptcy Judge